## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| *In re*<br><br>AFM MATTRESS COMPANY LLC,[1]<br><br>Debtor. | : : : : : : : : : : : | Chapter 11<br><br>Case No. 25-11288 (MFW) |

**MOTION OF THE UNITED STATES TRUSTEE FOR ENTRY OF AN ORDER
(I) CONVERTING CASE TO CASE UNDER CHAPTER 7 OR, ALTERNATIVELY,
(II) DISMISSING THE CASE**

In support of his motion for entry of an order (i) converting the above-captioned case of AFM Mattress Company LLC (the "Debtor") to a case under chapter 7 or, alternatively, (ii) dismissing the case, Andrew R. Vara, United States Trustee for Regions 3 & 9 ("U.S. Trustee"), by and through his counsel, avers:

**PRELIMINARY STATEMENT**

1. The Debtor has failed to timely pay monthly rent for leased locations and professional fees/expenses related to case administration. The Debtor admits that it has suffered $1,256,643 in operating losses through the end of November 2025. There is a "substantial or continuing loss to, or diminution of, the Debtor's estate." Further, absent a prompt recapitalization in the form of financing on favorable terms or an equity infusion, it appears that there is no reasonable likelihood of rehabilitation in this case. Accordingly, both predicates for relief under section 1112(b)(1, 4(A)) of the Bankruptcy Code have been satisfied. This Court should convert

---

[1] The last four digits of the Debtor's federal tax identification number are 2209. The location of the Debtor's corporate headquarters is 1300 Pratt Blvd, Elk Grove Village, IL 60007.

the case to a chapter 7 case to allow an independent fiduciary to investigate and pursue potential claims and causes of action against, *inter alia*, the Debtor's affiliates and insiders.

## JURISDICTION AND STANDING

2. This Court has jurisdiction over the above-captioned case pursuant to 28 U.S.C. § 1334. This Court is authorized to hear and determine the Motion pursuant to 28 U.S.C. § 157(a, b), and the amended standing order of reference issued by the United States District Court for the District of Delaware dated February 29, 2012.

3. Under 28 U.S.C. § 586, the U.S. Trustee is generally charged with monitoring the federal bankruptcy system. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog"). Specifically, the U.S. Trustee is charged with "monitoring the progress of cases under title 11 and taking such actions as the United States trustee deems to be appropriate to prevent undue delay in such progress." 28 U.S.C. § 586(a)(3)(G).

4. The U.S. Trustee has standing to be heard with respect to the Motion pursuant to 11 U.S.C. § 307.

## BACKGROUND

5. On July 6, 2025 (the "Petition Date"), the Debtor filed the voluntary petition which initiated the above-captioned case.

6. On July 18, 2025, the U.S. Trustee filed a notice appointing the Official Committee of Unsecured Creditors (the "Committee") in the case.

7.      On the Petition Date, the Debtor (i) owned and operated approximately 52 "American Mattress" retail store locations (as well as several warehouse locations) across Illinois and Indiana and (ii) sold mattresses online via the America Mattress website at americanmattress.com.  Kenna 1st Day Decl. ¶ 6 [D.I. 13].

8.      On December 19, 2025, DF Oak Park, LLC, Kite Realty Group, and Win Properties, Inc. (together, the "Landlords") filed their *Motion to Compel Payment of Rent* (the "Landlord Motion to Compel") [D.I. 223].  The Landlord Motion to Compel is presently scheduled for a status conference on February 3, 2026 at 2:00 P.M. ET.

9.      In the Motion, the Landlords alleged that the Debtor had failed to pay rent for the months of November 2025 and December 2025 in the total amount of $60,194.73.  Landlord Mot. to Compel ¶ 10.

10.     On December 19, 2025, the Committee filed its *Motion to Compel the Immediate Payment of Approved Professional Fees* (the "Committee Motion to Compel") [D.I. 226].  In the Committee Motion to Compel, the Committee alleged that its retained co-counsel, Levenfeld Pearlstein and Cozen O'Connor, were owed $110,176.80 as of the date the motion was filed.

11.     The Committee Motion to Compel was not contested; an order was entered granting the motion on January 6, 2026 [D.I. 228].

12.     Based upon information and belief, the Landlords and the Committee professionals are not the only administrative claimants to whom the Debtor has or had past-due, post-petition obligations which were not timely paid.  By way of non-exclusive example, Valparaiso II, LLC filed a joinder in the Landlord Motion to Compel on January 16, 2026, alleging that it had not been paid (i) rent for December 2025 and January 2026 and (ii) stub rent for July 2025 [D.I. 234].  Additionally, on January 28, 2026, LP Holdings 1953 LLC moved to compel immediate payment

of stub rent and post-petition rent and obligations pursuant to 11 U.S.C. §§ 365(d)(3) and 503(b)(1)(A), alleging that it had not been paid rent for January 2026 and stub rent for July 2025 [D.I. 243].

13. Further, Debtor's counsel has not filed a fee application for (and, by extension, has not been paid for services rendered during) periods including/subsequent to August 2025 – nearly six months.

14. The income statement section of the monthly operating reports for July 2025 [D.I. 149], August 2025 [D.I. 150], October 2025 [D.I. 213] and November [D.I. 233] indicate that the Debtor's selling expenses for each of those months, standing alone, exceeded the gross profit. In short, the Debtor admits that it has suffered $1,256,643 in operating losses through the end of November 2025.[2]

## GROUNDS/BASES FOR RELIEF

*Conversion or Dismissal*

15. 11 U.S.C. § 1112 provides in part:

(a) The debtor may convert a case under this chapter to a case under chapter 7 of this title unless—

    (1) the debtor is not a debtor in possession;

    (2) the case originally was commenced as an involuntary case under this chapter; or

    (3) the case was converted to a case under this chapter other than on the debtor's request.

---

[2] The numbers on the income statement section (Part 4) of the Debtor's September 2025 monthly operating report [D.I. 180] (i) reflect a loss of $144,917 for that month and (ii) do not appear to add up (line c in that section (gross profit of $2,270,206), minus the total of lines d – j ($973,832), does not equal the reported $144,917 loss; rather, it results in a $1,296,374 profit).

(b)

    (1)    Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

    (2)    The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—

        (A)    there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

        (B)    the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—

            (i)    for which there exists a reasonable justification for the act or omission; and

            (ii)    that will be cured within a reasonable period of time fixed by the court.

    (3)    The court shall commence the hearing on a motion under this subsection not later than 30 days after filing of the motion, and shall decide the motion not later than 15 days after commencement of such hearing, unless the movant expressly consents to a continuance for a specific period of time or compelling circumstances prevent the court from meeting the time limits established by this paragraph.

    (4)    For purposes of this subsection, the term "cause" includes—

        (A)    substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation[.]

5

16. 11 U.S.C. § 1112(b)(2)(B) indicates that, if the U.S. Trustee moves for conversion under 11 U.S.C. § 1112(b)(4)(A) and establishes "cause" for relief, there are no "unusual circumstances" that would allow this Court to refrain from converting the above-captioned case to a case under chapter 7.

17. Through the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005), Congress eliminated this Court's discretion that was previously reflected in the appearance of the permissive word "may" in to 11 U.S.C. § 1112(b) and, through substitution of the mandatory word "shall" for "may," directed this Court to convert or dismiss the case, "whichever is in the best interests of the creditors and the estate," if "cause" is established. 7 COLLIER ON BANKRUPTCY § 1112.04(1) (15th ed. rev. 2005) (". . . as amended in 2005, section 1112(b) circumscribes the court's discretion by directing certain instances in which the court must, and must not, convert or dismiss the case."); *cf. Association of Civilian Technicians v. FLRA*, 22 F.3d 1150, 1153 (D.C. Cir. 1994) ("The word 'shall' generally indicates command that admits of no discretion on the part of the person instructed to carry out the directive.").

18. The purpose of 11 U.S.C. § 1112(b)(4)(A) is to "preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation." *In re Lizeric Realty Corp.*, 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995) (quoted in *Loop Corp. v. United States Trustee (In re Loop Corp.)*, 379 F.3d 511, 516 (8th Cir. 2004)).

19. "Substantial or continuing loss to or diminution of the estate" is established where a debtor has continuing, negative cash flow post-petition. *See Loop Corp.*, 379 F.3d at 515-16.

20.     "Rehabilitation," as the term is used in 11 U.S.C. § 1112(b)(4)(A), means "to put back in good condition; re-establish on a sound, firm basis." 5 COLLIER ON BANKRUPTCY § 1112.03(2) (15th ed. 1980) (quoted in *In re L.S. Good & Co.*, 8 B.R. 315, 317 (Bankr. N.D. W.Va. 1980)).  To be clear, "rehabilitation" does not include or mean the ability to confirm a liquidating plan.

21.     The Landlord Motion to Compel, the Committee Motion to Compel, and other information received by undersigned counsel together indicate that the Debtor is not paying administrative expenses as they become due.  The Debtor's failure to pay amounts due and owing to the Landlords, the Committee's professionals and other administrative claimants constitutes a "substantial or continuing loss to and diminution of the estate."  *See In re Alston*, 756 Fed. Appx. 160, 164 (3d Cir. 2019) (mounting unpaid, post-petition administrative expenses and average negative cash flow over last six months of case established that value of the estate was diminishing; citing *Loop Corp.*, 379 F.3d at 515-16).

22.     The Debtor's post-petition losses (in the amount of $1,256,643 through the end of November 2025) also constitute a "substantial or continuing loss to and diminution of the estate."

23.     Absent a prompt recapitalization in the form of financing on favorable terms or an equity infusion, it appears that there is no reasonable likelihood of rehabilitation in this case.

24.     Conversion of the above-captioned case to a case under chapter 7 – rather than dismissal – is appropriate to allow an independent fiduciary to investigate and pursue potential claims and causes of action against, *inter alia*, the Debtor's affiliates and insiders.  As of the Petition Date, the Debtor's Michigan affiliate owed the Debtor $1,200,000, the Florida affiliate owed the Debtor $220,000, and the Missouri affiliate owed the Debtor $120,000.  Kenna 1st Day Decl. ¶ 12 [D.I. 13].

**CONCLUSION**

WHEREFORE the U.S. Trustee requests that this Court enter an order (i) converting the case to a case under chapter 7 or, alternatively, (ii) dismissing the case.

Dated: January 30, 2026
       Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA
UNITED STATES TRUSTEE,
REGIONS 3 and 9**

By: *Joseph J. McMahon, Jr.*
Megan Seliber
Trial Attorney
Joseph J. McMahon, Jr. (# 4819)
Assistant United States Trustee
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491 (Phone)
(302) 573-6497 (Fax)
megan.seliber@usdoj.gov
joseph.mcmahon@usdoj.gov